COMMONWEALTH *vs.* SUSAN BIANCARDI.

Essex. September 11, 1995. - November 7, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal*, Instructions to jury, Voir dire, Examination of jurors. *Insanity. Jury and Jurors.*

In a criminal case, the issue of the propriety of the judge's refusal to instruct the jury as the defendant had requested with respect to the consequences of a verdict of not guilty by reason of insanity was sufficiently preserved for appellate review. [253-254]

Where the judge refused, in a criminal case in which the lack of criminal responsibility was fairly raised, to instruct the jury as requested by the defendant with respect to the consequences of a verdict of not guilty by reason of insanity and instead gave an instruction inconsistent with the defendant's request, the error was prejudicial and a new trial was required. [254]

At the retrial of a murder case, the inquiry of each juror required under *Commonwealth* v. *Seguin, ante* 243 (1995), should be conducted, if requested by the defendant. [254-255]

At the trial of a murder case, the judge's instructions to the jury did not foreclose the jury's consideration of the circumstances of the crime in deciding the question of the defendant's sanity. [255]

INDICTMENTS found and returned in the Superior Court Department on July 24, 1991.

The cases were tried before *John L. Murphy, Jr.*, J.

*Carol A. Donovan*, Committee for Public Counsel Services, for the defendant.

*Elin H. Graydon*, Assistant District Attorney (*Robert N. Weiner*, Assistant District Attorney, with her) for the Commonwealth.

WILKINS, J. In *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975), this court announced that thereafter "where the defense of insanity [lack of criminal responsibility] is fairly raised, the defendant, on his timely request, is entitled to an

instruction regarding the consequences of a verdict of not guilty by reason of insanity." *Id.* at 823 n.12. In this case, there was evidence of the defendant's lack of criminal responsibility, and the defendant made a timely request for an instruction concerning the consequences of a verdict of not guilty by reason of insanity. The judge, however, declined to give the requested instruction and gave no instruction consistent with the requirements of the *Mutina* opinion.

The defendant, found guilty of murder in the first degree of her daughter Marcia and of armed assault with intent to murder her daughter Audrey, appeals challenging, among other things, the judge's failure to give the requested consequences instruction. The Commonwealth asserts that the defendant did not properly preserve the issue for appellate review and that, even if she did, the judge's omission does not require a new trial. We conclude that the issue was adequately, although not artfully, preserved for review and that the judge's failure to instruct as requested was not cured by his alternative of advising the jury that, if they asked him a question about the consequences of an insanity verdict, he would answer it. There must be a new trial.

The defendant's requested instruction concerning the consequences of a verdict of not guilty by reason of insanity, is set forth in the margin.[1] It conforms to the substance of the

---

[1] "A finding of not guilty by reason of insanity is not the same as a finding of not guilty. If you find the defendant not guilty by reason of insanity, she does not just walk out of the courtroom a free woman, or out of a mental health facility after a predetermined time. This Court may order her to be hospitalized for an initial 40-day observation period. During that period, the District Attorney or another appropriate authority may petition the court under our statutes for the commitment of the defendant to a facility for the care and treatment of mentally ill persons. If upon such petition the Court finds that the defendant is mentally ill at the present time, and that her discharge would create a likelihood of serious harm to her or others, then she would be committed to such a facility. The order of commitment would thereafter periodically be reviewed by the courts of the Commonwealth. The District Attorney must be notified prior to any hearing about the defendant's release, and may be heard at any such hearing, but the final decision, either to recommit or to release the defendant is always made by a judge. She would not be discharged unless a finding is made that she is sane and able to resume a normal life. *Com-*

charge approved in *Commonwealth* v. *Callahan*, 380 Mass. 821, 827-828 (1980), and appearing in *Commonwealth* v. *Loring*, 14 Mass. App. Ct. 655, 658 n.1 (1982). See G. L. c. 123, § 16 (1994 ed.).[2]

At the charge conference, the judge stated that he would not give a *Mutina* instruction but would tell the jurors that the information was available if they asked for it. Defense counsel did not then argue that the substance of the requested charge was mandatory, nor did the prosecutor so advise the judge, as he might have to avoid the creation of an appellate issue. When defense counsel asked what the judge proposed to say, the judge replied that he was not certain. Defense counsel explained that he made the request because there is the potential that "lay jurors [will] wonder, no matter what the Court instructs them, as to the consequences of their finding." Defense counsel did not press the point or ask that his appellate rights be saved.

The judge told the jury that, if they had a "question as to the consequences of an insanity verdict," he would instruct them further. He also instructed the jury that, if the defendant was insane, "that's the end of the case." The defendant did not object to the judge's failure to give the substance of her requested consequences instruction or to the instruction the judge gave.

The Commonwealth argues that the defendant did not preserve the issue for appellate review and that the judge's refusal to give a consequences instruction, which in any event would be before us under G. L. c. 278, § 33E (1994 ed.), did not create a substantial likelihood of a miscarriage of justice. We conclude that the request for a consequences instruction, the judge's rejection of that request, and the giving of an instruction inconsistent with the defendant's request satisfied the requirements of Mass. R. Crim. P. 24 (b), 378 Mass. 895

*monwealth v. Mutina*, 366 Mass. 810 (1975); *Commonwealth v. Callahan*, 380 Mass. 821 (1980); *Commonwealth v. Loring*, 14 Mass. App. Ct. 655 (1982)."

[2]For the form of other requested consequences instructions, see *Commonwealth* v. *Ward*, 412 Mass. 395, 398-399 nn.1 & 2 (1992).

(1979). Surely, the point was brought to the judge's atten-
tion, and he rejected it. If at the charge conference the judge
had stated that the defendant's rights were saved, certainly
the issue would have been preserved for appellate review
without the need for a postcharge objection. *Commonwealth*
v. *Torres*, 420 Mass. 479, 483-484 (1995). *Commonwealth* v.
*Grenier*, 415 Mass. 680, 686 n.8 (1993). In this case, there
was no need for a postcharge objection, where the judge had
given an instruction that was inconsistent with the defend-
ant's request. There was no reasonable prospect in the cir-
cumstances that, on objection, the judge would have repudi-
ated his stated position. Consequently, the judge's error was
preserved for appellate review.

The Commonwealth does not contend that the judge did
not have to give the substance of the requested instruction. It
argues rather that the error was substantially mitigated by
the judge's stated willingness to tell the jury, on their re-
quest, of the consequences of a verdict of not guilty by reason
of insanity. What the judge told the jury did not make the
error inconsequential. His statement suggested that, to do
their job and in fairness to the defendant, the jurors need not
know of the consequences of a successful insanity "defense."
A specific juror concerned about the consequences of such a
verdict might not have been willing and able to persuade the
other jurors to inquire of the judge. Moreover, jurors may
have been misled by the judge's instruction that, if the de-
fendant was insane, "that's the end of the case." Because the
defendant's case depended substantially on her assertion of a
lack of criminal responsibility, the failure to give a *Mutina*
instruction was prejudicial error.

We comment briefly on those issues that may arise at a
new trial. We have ruled today in *Commonwealth* v. *Seguin*,
*ante* 243 (1995), that, on request, when a defendant discloses
that he or she may assert a lack of criminal responsibility,
the judge must conduct an individual voir dire concerning
each prospective juror's willingness to return a verdict of not
guilty by reason of insanity. In this case, the judge declined
even to inform the jury venire that the defendant might rely

on a defense of insanity.[3] At the retrial, an inquiry of each juror, as required by our *Seguin* opinion, shall be conducted, if the defendant requests it.

The defendant is correct that the circumstances of the crime may raise the issue of the defendant's sanity. See *Commonwealth* v. *Mills*, 400 Mass. 626, 631 (1987); *Commonwealth* v. *Monico*, 396 Mass. 793, 797-798 (1986). The judge was not obliged, however, to instruct the jury specifically that they could consider the facts of the crime in deciding the question of the defendant's sanity. The judge told the jury that they could consider all the evidence, including non-expert testimony in passing on that issue. He did not, therefore, foreclose consideration of the circumstances of the crime in deciding the question of the defendant's sanity. See *Commonwealth* v. *Matthews*, 406 Mass. 380, 391 (1990). There was no error in this regard.

The judgments are reversed, the verdicts set aside, and the case is remanded for a new trial.

*So ordered.*

---

[3]The defendant requested the following question which the judge declined to ask:

"There may be evidence introduced during trial that the defendant, because of a mental illness, was unable to substantially conform her conduct to the requirements of the law. Are you willing to accept the instructions of this court regarding such issue? Is there any reason why you cannot stand indifferent as a juror on these cases if this issue is placed before you?"

This question was focused on the defendant's intention to rely on a mental illness (not a mental defect) and on her lack of substantial capacity to conform her conduct to the requirements of law (and not on her lack of capacity to appreciate the wrongfulness of her conduct). See *Commonwealth* v. *McHoul*, 352 Mass. 544, 555 (1967), adopting the definition of the lack of criminal responsibility appearing in § 4.01 of the American Law Institute's Model Penal Code, Proposed Official Draft (1962). A judge would not have to ask the question in the words requested by a defendant, but the subject must be covered. *Commonwealth* v. *Seguin, ante* 243 (1995).