NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-899

COMMONWEALTH

vs.

MARIO ESTEFANOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial in Superior Court, the jury found the defendant guilty of three counts of rape, and two counts of assault and battery on a household member.  The jury found the defendant not guilty of one count of assault and battery with a dangerous weapon and one count of assault with a dangerous weapon.  The defendant appeals, arguing that the trial judge abused her discretion by allowing the Commonwealth to present prior bad act evidence concerning the defendant's treatment of the victim, his wife.  We affirm.

Discussion.  "It is well settled that the prosecution may not introduce evidence of a defendant's prior or subsequent bad acts for the purpose of demonstrating bad character or

propensity to commit the crime charged." Commonwealth v. Barrett, 418 Mass. 788, 793 (1994). But in domestic violence cases, evidence of previous violence in the relationship may be relevant to show the violent or hostile nature of the defendant's relationship with the victim, Commonwealth v. Almeida, 479 Mass. 562, 567-569 (2018), or to show intent, motive, or absence of mistake or accident. Commonwealth v. Oberle, 476 Mass. 539, 550-552 (2017). Mass. G. Evid. § 404(b)(2) (2025). "Even if the evidence is relevant to one of these other purposes, the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).

The determination whether to admit such evidence is "committed to the sound discretion of the trial judge and will not be disturbed by a reviewing court absent 'palpable error.'" Commonwealth v. McCowen, 458 Mass. 461, 478 (2010), quoting Commonwealth v. Fordham, 417 Mass. 10, 23 (1994). The question is not whether we would have made the same decision, but instead whether the judge made a "clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives"

2

(quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge allowed the Commonwealth's motion in limine to admit evidence (1) that when living in Egypt, the defendant raped and struck the victim in the face, causing an eye injury; (2) that the defendant "repeatedly . . . physically and verbally abused [the victim] throughout the course of their relationship";[1] and (3) that the defendant made threats to the victim "about taking their child from her and stealing her travel documents."  But the judge specifically stated that the prior bad acts evidence was admissible for the limited purpose of "establish[ing] [the] nature of [the] relationship [and the] defendant's motive and intent," each of which is a permissible purpose.  See Almeida, 479 Mass. at 567-569; Oberle, 476 Mass. at 550-552.  The question remains whether the probative value of the defendant's previous violence and threats against the victim is outweighed by the risk of unfair prejudice to the defendant. See Crayton, 470 Mass. at 249.

---

[1] The motion also sought to admit evidence that the defendant repeatedly raped the victim, but although the judge allowed the motion, no evidence of uncharged rapes was introduced, other than the rape in Egypt specifically referred to in the motion.

In Commonwealth v. Peno, the court identified a non-exhaustive list of factors that may be considered "[w]hen assessing whether the risk of unfair prejudice outweighs the probative value of the challenged evidence," including:

> "(1) whether the trial judge carefully weighed the probative value and prejudicial effect of the evidence introduced at trial . . . ; (2) whether the judge mitigated the prejudicial effect through proper limiting instructions . . . ; (3) whether the challenged evidence was cumulative of other admissible evidence, thereby reducing the risk of any additional prejudicial effect . . . ; and (4) whether the challenged evidence was so similar to the charged offense as to increase the risk of propensity reasoning by the jury."

485 Mass. 378, 386 (2020).  We address these factors in turn.

1.  Probative and prejudicial value.  The judge properly weighed the probative value and prejudicial effect of the evidence.  The judge heard argument on the Commonwealth's motion in limine and then granted the motion, ruling that the prior bad acts evidence was not too remote in time relative to the charged conduct and was relevant to establish the nature of the relationship and the defendant's motive and intent.  Although the defendant has failed to provide us with the transcript from the motion hearing, we are unwilling to assume that the judge did not engage in the requisite balancing during that hearing. In any event, such consideration is implicit not only in the fact that she heard argument before allowing the motion, see Commonwealth v. Samia, 492 Mass. 135, 148 (2023), but also that

4

she pressed the Commonwealth on the morning of trial to identify the exact scope of the prior bad acts evidence and how it would be admitted. "This is not a case where the judge failed to exercise any discretion by making no effort at all to scrutinize the contested evidence" (quotation and citation omitted). Commonwealth v. West, 487 Mass. 794, 807 (2021).

2. Limiting instructions. The judge took care to mitigate potential prejudice to the defendant by providing clear, forceful limiting instructions, which we presume the jury followed. Commonwealth v. Donahue, 430 Mass. 710, 718 (2000). The judge instructed the jury to consider the prior bad acts testimony only as evidence of "the nature of the relationship between the parties, the defendant's motive, state of mind and intent" and not as "proof that [the defendant] has a criminal personality or of bad character." The judge continued her instruction as follows:

> "[y]ou may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if the defendant committed those acts [then] he must have committed the offenses for which he's been charged. It would be extremely unfair to consider this evidence for those purposes. For one thing, he's not charged with anything related to those acts and those acts have no relevance whatever to the charges in this case" (emphasis added).

This limiting instruction was more favorable to the defendant than usual, in two ways. First, the judge added the

5

"extremely unfair" admonition, which is not included in the model instruction, and which emphasizes the potential harm to the defendant if the jury were to improperly consider the evidence. Superior Court Model Jury Instructions, Criminal Practice 7.6.2 (2018). Second, the judge told the jury that the prior bad acts evidence was not related to and had "no relevance whatever to the charges in this case." Although this language admittedly had the potential to confuse the jury, as the bad acts evidence was of course relevant on specific, limited issues, it also further discouraged improper use (indeed, any use) of that evidence. See Commonwealth v. Linenkemper, 104 Mass. App. Ct. 467, 472 (2024) (identical instruction "if anything, inured to the defendant's benefit"). The judge gave similar instructions each time bad acts evidence was introduced and again during the final jury instructions.

Thus, the judge "monitored the development of the evidence closely," Commonwealth v. Copney, 468 Mass. 405, 414 (2014), and followed the favored practice of giving "contemporaneous limiting instructions," Commonwealth v. Facella, 478 Mass. 393, 402 (2017), as well as giving the instruction in her final charge. See Commonwealth v. Walker, 442 Mass. 185, 202 (2004) (risk of prejudice from prior bad act testimony "sufficiently ameliorated by the judge's limiting instructions, given

6

immediately after the testimony and repeated during the final instructions").

3. Whether challenged evidence was cumulative. We acknowledge that the prior bad acts testimony was not "cumulative of other properly admitted evidence," but rather was, aside from the charged conduct, the principal evidence on the limited issues for which it was admitted. Cf. West, 487 Mass. at 808 (where challenged evidence was cumulative of other properly admitted evidence, risk of added prejudice was reduced). Despite this factor, we conclude that the prior bad act testimony did not overwhelm the case. Contrast Commonwealth v. Dwyer, 448 Mass. 122, 129 (2006) (prior bad act evidence overwhelmed evidence of two rape charges where complainant testified "in detail about each of seven uncharged incidents"). The victim's testimony about the rape and eye injury was fairly brief, occupying about three transcript pages. Similarly, her and another witness's testimony about an assault in a car totaled about four transcript pages. However, there was substantially more evidence concerning the charged offenses. The victim herself recounted, in significant detail and over the course of more than ten transcript pages, the three separate incidents that resulted in the rape and assault charges. In addition, two first complaint witnesses testified to the

victim's statements after two of these incidents, and two police officers described their interactions with the victim after the 2019 incident that resulted in rape and other charges.

While the prior bad act testimony carried the potential for unfair prejudice to the defendant, the judge could reasonably conclude that its probative value was greater, as it provided the jury with the context of the "ongoing, continuous abusive relationship [which made] the victim's actions and reactions make logical sense." Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018). At trial, the defendant attacked the victim's credibility by pointing out that she never reported the defendant's violence to the police or medical professionals. To explain why the victim felt she could not report the crimes, the Commonwealth focused on the continuous and all-encompassing nature of the violence in the couple's relationship. The prior bad act testimony provided the jury with the important context of how thoroughly the victim was under the defendant's violent control; he had been abusing her as far back as in Egypt just two weeks after their wedding, and he continued to do so regularly throughout their marriage, even in front of other witnesses. "Thus, the relationship between [the] defendant and [the victim], a proper use of uncharged conduct, was important evidence here" (quotations and citations omitted). Id.

4. Similarity of charged and uncharged conduct. The prior bad acts were similar to the charged offenses; both involved rape and other assaultive acts. While generally such similarity may lead to a risk of impermissible propensity reasoning by the jury, this is less of a concern when, as here, "a defendant is charged with any form of illicit sexual intercourse." Commonwealth v. McDonagh, 480 Mass. 131, 143 (2018), quoting Commonwealth v. King, 387 Mass. 464, 469-470 (1982). In such cases, "evidence of the commission of similar crimes by the same parties though committed in another place, if not too remote in time, is competent to prove an inclination to commit the [acts] charged." McDonagh, supra.

Here, all events admitted as prior bad act evidence occurred since the couple married in 2013; the charged conduct occurred between 2014 and 2019. "There is no bright-line test for determining temporal remoteness of evidence of prior misconduct," Commonwealth v. Helfant, 398 Mass. 214, 228 n.13 (1986), but "[w]here the prior misconduct is part of a continuing course of related events . . . the allowable time period is greater" (quotation and citation omitted). Commonwealth v. Moran, 101 Mass. App. Ct. 745, 749 (2022). Although one of the prior bad acts occurred in a different place, Egypt, the judge reasonably concluded that that evidence

9

was not too remote in time and was admissible.  See id. (prior bad acts occurring in different county, nineteen to twenty-one years earlier, were admissible).

Relatedly, we are unpersuaded by the defendant's argument that evidence of the charged offenses themselves already provided ample bad acts evidence, so that the challenged evidence of uncharged conduct was, the defendant asserts, "unnecessary" to prove the Commonwealth's case.  "It is not a foundational requirement for the admissibility of prior bad act evidence that the Commonwealth show either that the evidence is necessary or that there is no alternative way to prove its case."  Oberle, 476 Mass. at 551 n.7, citing Commonwealth v. Copney, 468 Mass. 405, 413 (2014).  See Mass. G. Evid. § 404(b) note (2025).

Finally, the jury were not blind to the weaknesses in the Commonwealth's case and could weigh the evidence rationally, as shown by their finding the defendant not guilty of two of the charges.  See Linenkemper, 104 Mass. App. Ct. at 472.  In other words, the jury were not so swept away by the bad act evidence as to conclude that the defendant had a criminal personality and so must have committed all of the charged offenses.  We are unpersuaded that the challenged prior bad act evidence "so

10

inflame[d] the jury's passion or sympathy that they would be unable to remain impartial."  Peno, 485 Mass. at 399.

For all of these reasons, the judge did not abuse her discretion in admitting the prior bad acts testimony.

Judgments affirmed.

By the Court (Desmond,
  Sacks & Brennan, JJ.[2]),

Clerk

Entered:  June 3, 2025.

---

[2] The panelists are listed in order of seniority.

11